**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ERIC LESTER LEINBACH, | |
|     Appellant, | CIVIL ACTION NO. 15-CV-00006 |
|     v. | (JUDGE CAPUTO) |
| JP MORGAN CHASE BANK, NA, | CHAPTER 7 |
|     Appellee. | Bankruptcy #14-04040-JJT |

**MEMORANDUM**

Presently before the Court is Eric Lester Leinbach's (1) appeal from a December 18, 2014 Order of the United States Bankruptcy Court for the Middle District of Pennsylvania denying relief from an automatic stay without prejudice (Doc. 9) and (2) Motion to Alter or Amend this Court's August 3, 2015 Order granting an extension of time to JP Morgan Chase Bank NA ("JP Morgan") to file a responsive brief (Doc. 16). Because this Court lacks jurisdiction to hear Leinbach's appeal, his appeal will be dismissed. Because Leinbach has failed to establish a clear error of law in this Court's Order granting an extension of time to JP Morgan to file a responsive brief, Leinbach's motion to alter will be denied.

**I. Background**

On August 31, 2014, Eric Lester Leinbach ("Leinbach") filed a petition for bankruptcy under Chapter 7 of the United States Bankruptcy Code. In his Schedule D, Leinbach listed JP Morgan as a secured creditor. On September 29, 2014, JP Morgan filed a motion for relief from the automatic stay ("Motion for Relief") so that it could record a Sheriff's Deed and proceed with its state court rights up to and including eviction of any and all personal property at Leinbach's premises located at 4135 Crest View Drive, Stroudsburg, PA 18360-8007 ("the Mortgaged Premises"). JP Morgan asserts it became the owner of the Mortgaged Premises as a result of a foreclosure and judicial sale by the Sheriff of Monroe County on March 27, 2014.

On October 17, 2014, Leinbach filed a response to JP Morgan's motion, asserting that JP Morgan was not a real party in interest and lacked standing to bring its motion. (Doc. 5-6.) Leinbach also asserted that there were two (2) appeals pending in the Superior Court of the Commonwealth of Pennsylvania relating to the denial of a petition to set aside the Sheriff sale, including but not limited to lack of due process and lack of proper notice. A hearing on the Motion for Relief was held on November 18, 2014, at which Leinbach and John J. Martin (the "Trustee") appeared.  However, because JP Morgan and its counsel failed to appear for the hearing, an order was entered denying JP Morgan's Motion for Relief based on JP Morgan's failure to prosecute.

On November 24, 2014, JP Morgan filed a motion to vacate the November 18, 2014 Order denying its Motion for Relief for failure to prosecute.  (Doc. 5-9.)  In its motion, JP Morgan asserted that it was "through inadvertence or mistake in scheduling" that it did not appear at the November 18, 2014 hearing, and requested another hearing to be scheduled.

That same day, the Bankruptcy Court entered an order setting a hearing on JP Morgan's motion to vacate for December 18, 2014.  (Doc. 5-12.)  On December 17, 2014, Leinbach filed a letter with the Bankruptcy Court opposing JP Morgan's motion to vacate, arguing that the motion lacked any specificity as to the factual basis for why JP Morgan and its counsel failed to appear for the November 18, 2014 hearing, and that the motion should therefore be denied.

On December 18, 2014, the Bankruptcy Court entered an order denying JP Morgan's motion without prejudice.  Specifically, the Bankruptcy Court noted that JP Morgan would be allowed to file another motion because the Court did not generally view motions for relief from automatic stays as being final orders or having any preclusive effect given the expedited nature of the motions.  Accordingly, on December 23, 2014, JP Morgan filed its second motion for relief from the automatic stay.

2

On January 2, 2015, Leinbach filed his Notice of Appeal of the Bankruptcy Court's December Order and on March 5, 2015, he filed his brief in support. (Doc. 9.) JP Morgan was ordered to file its brief in response by April 3, 2015. On July 31, 2015, JP Morgan, having not yet filed a response, filed a motion for an extension of time to file its brief, asserting that counsel never received service of Leinbach's brief and never received notification that it was filed via ECF. (Doc. 20.) An unsworn declaration by counsel asserting the same was also filed. (Doc. 20-1.) On August 3, 2015, JP Morgan's motion was granted, and JP Morgan was ordered to file its brief in response by August 31, 2015.

On August 17, 2015, Leinbach filed a motion to alter this Court's August 3, 2015 Order granting JP Morgan's motion for an extension of time ("Motion to Alter"), arguing that this Court failed to properly conduct an "excusable neglect" analysis. (Doc. 16.) On August 31, 2015, JP Morgan filed its brief in response to Leinbach's appeal (Doc. 17) and on September 14, 2015, Leinbach filed his reply (Doc. 19). On September 17, 2015, JP Morgan filed its brief in opposition to Leinbach's Motion to Alter. (Doc. 20.) Leinbach has not filed a reply. Both Leinbach's appeal and his Motion to Alter are now ripe for disposition.

## II. Jurisdiction

Before reaching the merits of Leinbach's appeal, I must first assess whether there is jurisdiction to hear his appeal. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 ("On every writ of error or appeal, the first and fundamental question is that of jurisdiction."). Federal courts are courts of limited jurisdiction, and therefore the requirement that jurisdiction be established is a threshold matter. *Id.* at 94-95; *see also Frederico v. Home Depot*, 507 F.3d 188, 191 (3d Cir. 2007) ("A threshold matter requires our attention: we must first decide whether the District Court's dismissal without prejudice meets the finality requirement of 28 U.S.C. § 1291 to vest this Court with jurisdiction.").

District courts of the United States shall have jurisdiction to hear appeals "from final judgments, orders, and decrees" of bankruptcy judges entered in cases and proceedings referred to bankruptcy judges under 28 U.S.C. § 157. 28 U.S.C. § 158(a)(1). Generally, the stay of a civil action is interlocutory and not a final, appealable order. *See Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 275 (1988). Rather than producing a final order that ends the litigation on the merits, the denial of a stay ensures that the litigation will proceed. *Id.*

However, the Third Circuit Court of Appeals has held that in the context of bankruptcy cases, the concept of finality should be viewed in a more "pragmatic and less technical sense than in other matters." *In re Meyertech Corp.*, 831 F.2d 410, 414 (3d Cir. 1987); *see also United States v. Nicolet, Inc.*, 857 F.2d 202, 205 (3d Cir. 1988) (finding that a "pragmatic and less technical approach to finality" is more appropriate in bankruptcy proceedings). The rationale for viewing finality under a less rigorous standard in the bankruptcy context is that bankruptcy cases frequently involve protracted proceedings that involve multiple parties. *In re Amatex Corp.*, 755 F.2d 1034, 1039 (3d Cir. 1985). To delay the resolution of discrete claims until after final approval of a reorganization plan would waste time and resources, "particularly if the appeal resulted in reversal of a bankruptcy court order necessitating re-appraisal of the entire plan." *Clark v. First State Bank (In re White Beauty View)*, 841 F.2d 524, 526 (3d Cir. 1988). Therefore, in the bankruptcy context, courts have permitted appellate review of orders that in other contexts might be considered interlocutory. *See In re Amatex Corp.*, 755 F.2d at 1039. Determining whether a bankruptcy court order constitutes a final appealable order is a fact-intensive inquiry that should be determined on a case-by-case basis. *Nicolet*, 857 F.2d at 203, 206 n.2.

Here, Leinbach appeals a bankruptcy court order denying relief from an automatic stay without prejudice. Although the Third Circuit Court of Appeals has noted that a bankruptcy order ***lifting*** an automatic stay is a final appealable order, it has held that an order ***denying*** relief from the stay may in some instances be a non-final, non-appealable

order. *Nicolet*, 857 F.2d at 203, 206 n.2 (citations omitted); *In re W. Elecs. Inc.*, 852 F.2d 79, 82 (3d Cir. 1988) ("*West Electronics*").[1] The difference between an order lifting an automatic stay and denying relief from the stay lies in the greater injury to be found in lifting a stay. As the Third Circuit has explained, a ruling that **lifts** the stay "impinges on the debtor's freedom from litigation harassment," and this "adverse effect cannot be remedied on appeal at the conclusion of the bankruptcy proceeding; by then, the injury will have been inflicted." *Nicolet*, 857 F.2d at 206 (holding that order lifting the automatic stay was a final appealable order); *see also In re Revel AC, Inc.*, 802 F.3d 558, 566-67 (3d Cir. 2015) (distinguishing an order **denying** relief from an automatic stay, which it found to be a final order, from an order **granting** a stay, which was deemed not to be final).

In determining whether an order denying relief from an automatic stay constitutes a final appealable order, courts within the Third Circuit have considered various factors, including (1) whether the denial of relief is without prejudice; (2) whether the order leaves additional work to be done by the Bankruptcy Court; (3) whether the order implicates purely legal issues; (4) the impact of the Bankruptcy Court's order upon the assets of the debtor's estate; (5) the necessity for further fact-finding on remand to the Bankruptcy Court; (6) the preclusive effect of the District Court's decision on the merits of subsequent litigation; and (7) the furtherance of judicial economy. *In re Nw. Corp.*, 319 B.R. 68, 72 (D. Del. 2005)

---

[1] The Ninth Circuit Court of Appeals has adopted a broad, *per se* rule that bankruptcy court orders granting or denying relief from an automatic stay are final, reviewable orders. *See In re Am. Mariner Indus., Inc.*, 734 F.2d 426, 429 (9th Cir. 1984). The Eleventh Circuit Court of Appeals also appears to have adopted this *per se* rule. *See In re Regency Woods Apartments, LTD*, 686 F.2d 899, 902-03 (11th Cir. 1982) (concluding that Congress intended the courts to expeditiously adjudicate, apart from the bankruptcy proceedings as a whole, complaints for relief from the automatic stay, thereby holding that an order granting relief from an automatic stay was a final, appealable order). However, the Third Circuit has not adopted such a *per se* rule, and instead requires a more factual determination on a case-by-case basis as to whether an order is a final, appealable order or not. *Nicolet*, 857 F.2d at 203, 206 n.2. Accordingly, I will not adopt such a broad, *per se* rule here.

("*Northwestern Corp.*"); *see also In re W. Elecs. Inc.*, 852 F.2d at 82 (concluding that an order denying relief from an automatic stay without prejudice was final based on the purely legal nature of the order and the fact that the denial without prejudice was not due to any need for further discovery or fact-finding). These factors weigh in favor of finding that the Bankruptcy Court's December Order was *not* a final order appealable to this Court.

First, the fact that the order at issue here was an order denying relief *without prejudice* suggests that the order was not final. For example, in *West Electronics*, the Third Circuit recognized that the language of the bankruptcy court order denying relief from an automatic stay *without prejudice* suggested that the order was not final. *In re W. Elecs. Inc.*, 852 F.2d at 82 ("[W]e recognize that the bankruptcy court denied the government's application to lift the stay without prejudice, thus suggesting that its order was not final."); *see also In re Nw. Corp.*, 319 B.R. at 72-73 (noting that the language in a bankruptcy court order denying relief from an automatic stay *without prejudice* suggested a "lack of finality"). Nevertheless, based "on the unusual facts" presented in *West Electronics*, the Third Circuit ultimately concluded that the order denying relief from the stay without prejudice *was* final based on two (2) of the above factors. *In re W. Elecs. Inc.*, 852 F.2d at 82. First, the bankruptcy court order was purely legal in nature, and the effect of the order was merely to reject the government's legal assertions of its bases for relief. *Id.* The passage of time would not have made the government's legal positions more tenable. *Id.* Second, the bases for the government's belief that it was entitled to relief existed at the time the government filed its motion to lift the stay; therefore, relief from the stay was not denied without prejudice "because the record was incomplete, discovery was ongoing or the court required further research on the issue before it." *Id.* In such circumstances, the Third Circuit regarded the bankruptcy court as a final order rejecting the government's legal positions, and therefore appealable. *Id.*

Unlike in *West Electronics*, neither of these factors are present here. The bankruptcy court order on appeal here was not purely legal in nature. In fact, there was no legal analysis in the order because the denial of relief was purely based on JP Morgan's failure

to appear for a hearing, not a rejection of JP Morgan's legal positions, as evidenced by the fact that the denial of relief was without prejudice. Therefore, the Bankruptcy Court was not denying JP Morgan's legal position, but delaying its resolution until a more appropriate time in the case, *i.e.*, when JP Morgan would be available to prosecute its motion. Second, unlike in *West Electronics*, there **is** a further need for fact-finding and discovery, because none had been taken yet. No evidence was presented at the November 18, 2014 hearing or at any other proceeding in the bankruptcy court relating to JP Morgan's motion to vacate. Accordingly, the Bankruptcy Court's order denying relief without prejudice was not a final order that is appealable before this Court.

In addition, treating the Bankruptcy Court's order as final would not serve the interests of judicial economy. For example, in *Northwestern Corp.*, the court was faced with the similar question of whether a bankruptcy court order denying relief from an automatic stay without prejudice was a final, appealable order. 319 B.R. 68 (D. Del. 2005). Like in *West Electronics*, the court in *Northwestern Corp.* also acknowledged that the denial of relief without prejudice suggested a "lack of finality," but ultimately held that the order was final based on the same two (2) factors considered by the court in *West Electronics*: (1) the order denying relief was purely legal in nature, and therefore the passage of time would not make the rejected legal positions any more tenable, and (2) the Bankruptcy Court decision was not conditioned on additional factual findings or proceedings, and there was no further work left for the Bankruptcy Court to do. *Id.* at 73. As explained earlier, these two (2) factors weighing in favor of finding the Order to be final are not present here because the Bankruptcy Court Order on appeal here was not purely legal in nature and the motion it ruled on **does** require additional factual findings or proceedings.

However, the court in *Northwestern Corp.* also considered a third factor that weighed in favor of finding the order to be final: judicial economy. The court concluded that because the Bankruptcy Court's conclusion that the appellant's claim was "core" affected the manner in which the Bankruptcy Court would adjudicate any renewed motions by the Appellant for arbitration, the interests of judicial economy would be served by "having a determination .

7

. . as to whether the Bankruptcy Court applied the correct analysis on the underlying legal question of whether [the appellant's] claim [wa]s core or non-core," before further bankruptcy court proceedings were initiated. *Id.* at 73. Therefore, the court treated the order as final and adjudicated the appeal on its merits. That is not the case here because there was no legal analysis in the Bankruptcy Court's Order for this Court to review or correct. Therefore, the Bankruptcy Court's December 18, 2014 Order denying relief from an automatic stay without prejudice was not a final order appealable to this Court. Accordingly, this Court does not have jurisdiction to hear this appeal and the appeal will be dismissed.

### III. Motion to Alter Judgment

Leinbach has also moved for this Court to alter the August 3, 2015 Order granting an extension of time for JP Morgan to file its brief in response to Leinbach's appeal. (Doc. 16.) Specifically, Leinbach asserts that this Court erred in granting JP Morgan's motion for an extension of time because JP Morgan failed to establish "excusable neglect" for its failure to file a responsive brief before its time to do so had expired. Rule 9006(b) of the Federal Rules of Bankruptcy Procedure provides that an extension of time may be granted "on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of **excusable neglect**." Leinbach asserts that JP Morgan failed to establish any factual basis for its failure to appear and that this Court did not properly conduct an "excusable neglect" analysis in granting JP Morgan's motion for an extension of time.

Motions to alter or amend judgment are governed by Rule 59(e) of the Federal Rules of Civil Procedure and place exacting requirements upon movants. *See Dougherty v. Advanced Wings, LLC*, No. 1:13-cv-447, 2013 WL 4718759, at *4 (M.D. Pa. Aug. 30, 2013) (citing *Scott v. Ebbert*, 485 F. App'x 526, 528 (3d Cir. 2012)). A rule 59(e) motion must rely on one (1) of three (3) grounds: (1) an intervening change in controlling law; (2) availability of new evidence not previously available; or (3) a need to correct a clear error of law or prevent manifest injustice. *Scott*, 485 F. App'x at 528; *see*

*also Max's Seafood Café ex rel. Lou Ann, Inc. v. Quinteros*, 176 F.3d 669, 67 (3d Cir. 1999) (citing the same three (3) grounds).

   Leinbach's motion will be denied.  There has been no intervening change in controlling law and no new evidence that was previously unavailable.  Leinbach also fails to identify a "clear error of law" of the sort that would compel reconsideration.  It is well-settled that a mere disagreement with the court does not translate into the type of clear error of law that justifies reconsideration of a ruling.  *Dougherty*, 2013 WL 4718759, at *5.  Additionally, reconsideration is an extraordinary remedy, and should be granted sparingly.  *D'Angio v. Borough of Nescopeck*, 56 F. Supp. 2d 502, 504 (M.D. Pa. 1999).

   As noted by one (1) of the cases cited by Leinbach in support of his Motion to Alter, the district court may exercise its own discretion in concluding whether there has been "excusable neglect" sufficient to excuse the delayed filing of a claim or brief.  *See In re Cendant Corp. Prides Litig.*, 233 F.3d 188, 189 (3d Cir. 2000) (finding that the district court did not abuse its discretion in concluding that there was excusable neglect to justify the late filing of certain claims).  The Supreme Court has explained that a court's decision to accept late filings and its inquiry into whether the failure of a party to act was the result of "excusable neglect" is "essentially equitable":

> Because Congress has provided no other guideposts for determining what sorts of neglect will be considered "excusable," we conclude that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission.

*Pioneer Inv. Servs. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 395 (1993).  Although "all relevant circumstances" are properly considered, the Supreme Court specifically delineated four (4) factors to consider:  (1) the danger of prejudice to the debtor, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith.  *Id.*

   First, there is little to no danger of prejudice to Leinbach in permitting JP Morgan to file a late brief in response to his appeal.  For example, in *Cendant Corp.*, the court

noted that the movant was unable to show "immediate economic dislocation, impact or harm to the corporation if the District Court were to extend the deadline for the filing of claims."  233 F.3d at 192 (noting that the movant would not be "unreasonably, nor palpably, nor illegally harmed").  Similarly, here, I am not persuaded that permitting JP Morgan to file a late brief in response to Leinbach's appeal would prejudice Leinbach in any material way so as to justify a denial of JP Morgan's motion.

Second, the "length of delay" factor also weighs in favor of granting JP Morgan's motion for an extension of time.  In *Cendant Corp.*, the court specifically noted that "the length of the delay, which amounted to a **few months**, did not involve a 'substantial lapse of time.'" *Id.* at 196 (emphasis added).  Similarly, here, the delay in JP Morgan's filing of its brief in response also amounted only to a "few months," and therefore did not involve a "substantial lapse of time."  *Id.*  Leinbach also relies on *Chemetron Corp. v. Jones*, 72 F.3d 341 (3d Cir. 1995) in support of his Motion to Alter.  However, in *Chemetron*, the delay amounted to **more than four (4) years** after the expiration of the claims bar date (as well as two (2) years after the Plan of Reorganization had been confirmed and twelve (12) years after media and neighborhood attention first focused on the claims at issue), as compared to the **few months** of delay JP Morgan exhibited here in filing its brief.  *Id.* at 350.  Additionally, permitting JP Morgan to respond to Leinbach's appeal would not have a significant negative "impact on judicial proceedings," since if anything, it permits the issue of Leinbach's appeal to be fully briefed, as opposed to resulting in a ruling in favor of Leinbach's claims by default.  *Id.* at 196-97 ("As to 'impact on judicial proceedings,' we properly defer to the District Court's conclusion that 'a slight enlargement of time to file . . . will not unreasonably hamper proceedings before the Court.").

Lastly, JP Morgan has asserted that the reason for its delay was due to its failure to receive notice, which the Third Circuit has cited as a specific example that would constitute "excusable neglect."  *Id.* at 197.  I have no reason to believe that JP Morgan has not acted in good faith, particularly given its subsequent compliance with this Court's

deadline for filing its brief in response to Leinbach's appeal and the submission of a declaration from its counsel attesting that he did not receive notice of the filings. Therefore, because Leinbach has failed to establish a "clear error of law" in my finding of excusable neglect to grant JP Morgan's motion for an extension of time, Leinbach's Motion to Alter will be denied.

### IV. Conclusion

For the above stated reasons, Leinbach's appeal will be dismissed for lack of jurisdiction and his Motion to Alter will be denied.

An appropriate order follows.


February 11, 2016                                     /s/ A. Richard Caputo
Date                                                       A. Richard Caputo
                                                              United States District Judge